FILED

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

2015 APR 28  ⊃ 2: 39

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| EMW INCORPORATED<br>13873 Park Center Road, Suite 216<br>Herndon, Virginia 20171 | )<br>)<br>)<br>) |
| **Plaintiff** | )<br>) |
| v. | )<br>)<br>) |
| CH2M HILL CONSTRUCTORS, INC.<br>Serve:  CT Corporation System<br>Registered Agent<br>401 Cox Road, Suite 285<br>Glen Allen, Virginia 23060 | )<br>)<br>)<br>)<br>)<br>) |
| FIDELITY AND DEPOSIT COMPANY<br> OF MARYLAND<br>Serve:  Corporation Service Company<br>Registered Agent<br>1111 East Main Street, 16th Floor<br>Richmond, Virginia 23219 | )<br>)<br>)<br>)<br>)<br>) |
| LIBERTY MUTUAL INSURANCE COMPANY<br>Serve:  Corporation Service Company<br>Registered Agent<br>1111 East Main Street, 16th Floor<br>Richmond, Virginia 23219 | )<br>)<br>)<br>)<br>) |
| **and** | )<br>) |
| FEDERAL INSURANCE COMPANY<br>Serve:  CT Corporation System<br>Registered Agent<br>401 Cox Road, Suite 285<br>Glen Allen, Virginia 23060 | )<br>)<br>)<br>)<br>)<br>) |
| **Defendants** | ) |

Case No. *1:15CV553*

*LMB / IDD*

## COMPLAINT
### For Amounts Due Under Payment Bonds,
### Breach of Contract and Constructive Fraud

Plaintiff EMW Incorporated ("EMW"), by counsel, states for its complaint against CH2M Hill Constructors, Inc. ("CH2M"), Fidelity and Deposit Insurance Company of Maryland ("Fidelity and Deposit"), Liberty Mutual Insurance Company ("Liberty Mutual") and Federal Insurance Company ("Federal") as follows:

## Introduction

1.      This is an action by EMW, a subcontractor to CH2M on a construction project undertaken for the United States Army Corps of Engineers in Bagram, Afghanistan, to collect approximately $4.7 million that is due and unpaid for services performed pursuant to the subcontract. EMW's claims are asserted directly against CH2M for breach of contract and constructive fraud, and are asserted against Fidelity and Deposit, Liberty Mutual and Federal Insurance (collectively, "the Sureties") based on their payments bonds issued on behalf of CH2M with respect to the construction project.

## Parties

2.      EMW is a corporation organized under the laws of the Commonwealth of Virginia and has its principal place of business in Herndon, Fairfax County, Virginia. EMW is engaged in the business of providing goods and services to agencies and activities of the United States Government as both a prime contractor and a subcontractor.

3.      CH2M is a corporation organized under the laws of the State of Delaware and has its principal place of business in Englewood, Colorado. CH2M is engaged in the business of providing engineer-procure-construct ("EPC") services to its customers. These include providing and managing engineering and construction services for projects undertaken by agencies and activities of the United States Government. CH2M transacts business in the Commonwealth of Virginia and maintains an office in Chantilly, Fairfax County, Virginia.

2

4.    Fidelity and Deposit is a corporation organized under the laws of the State of Maryland and has its principal place of business in Schamburg, Illinois.

5.    Liberty Mutual is a corporation organized under the laws of the Commonwealth of Massachusetts and has its principal place of business in Boston, Massachusetts.

6.    Federal Insurance is a corporation organized under the laws of the State of Indiana and has its principal place of business in Warren, New Jersey.

7.    The Sureties are all engaged in the business of providing corporate surety services, including the issuance of payment and performance bonds to secure the obligations of businesses that contract with agencies and activities of the United States Government to perform construction projects.  All of the sureties transact business in the Commonwealth of Virginia and in this judicial district.

## Jurisdiction and Venue

8.    The Court has jurisdiction over the claims asserted against CH2M pursuant to 28 U.S.C. § 1332(a)(1), in that there is complete diversity of citizenship between EMW and CH2M, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.    The Court has jurisdiction over the claims asserted against the Sureties pursuant to 28 U.S.C. § 1331, in that EMW's claims against the Sureties arise under federal law, specifically the Miller Act, 40 U.S.C. § 3131 *et seq.*

10.   Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that pursuant to 28 U.S.C. § 1391(c)(2) all of the defendants are deemed to be residents of Virginia and CH2M Hill is a resident of this judicial district.

## Facts

### A.   The Subcontract Between CH2M and EMW

11.     At all times relevant to this action CH2M was a member of a joint venture named CH2M Hill-Yuksel Joint Venture ("Joint Venture"), which had its principal place of business at CH2M's offices in Chantilly, Virginia.  In 2011 the Army Corps of Engineers awarded the Joint Venture prime contract W912ER-11-D-0008 for constructions services to be rendered at the U.S. military facilities in Bagram, Afghanistan.  Pursuant to the prime contract, the Joint Venture was awarded Task Order 0002 to construct a Coalition Operations Center ("COC") at Bagram Airfield.  The COC is a command and control facility for Coalition military headquarters in Bagram.  It is approximately 11,000 square meters in size, and includes a Sensitive Compartmented Information Facility ("SCIF") to protect classified and sensitive information.

12.     On or about December 19, 2011, the Sureties executed a payment bond in favor of the United States on behalf of the Joint Venture, as principal, in the cumulative penal sum of $11,988,588.30 to secure the Joint Venture's payment obligations to persons supplying labor and materials to the Joint Venture for the Bagram COC construction project, as follows:

| | |
|---|---|
| Fidelity and Deposit (bond 1) | $2,637,489.43 |
| Liberty Mutual | $1,978,117.07 |
| Federal Insurance | $1,978,117.07 |
| Fidelity and Deposit (bond 2) | $5,394,864.73 |

13.     On or about July 9, 2012, CH2M solicited a proposal from EMW to provide construction labor services to install the SCIF in the Bagram COC.  The solicitation was expressly limited to construction labor services; materials, logistical support and other

4

requirements for the project were to be provided by the members of the Joint Venture or other subcontractors.

14.     On July 11, 2012, in furtherance of its solicitation of a proposal from EMW, CH2M's Program Manager for the COC project sent EMW a project Bill of Materials spreadsheet titled "COC-BOM 19062012.xls" (the "BOM Spreadsheet"). The spreadsheet set out the specific quantities of various materials required for each construction element of the SCIF installation for which EMW would be responsible. For example, the BOM Spreadsheet entries for "Division 09 – Finishes" specified that 985 square meters of perimeter gypsum wall, 655 square meters of partition gypsum wall, and 7,165 square meters of gypsum plaster veneer were required for the SCIF. The BOM Spreadsheet provided precise material quantities for all other construction elements encompassed by the solicitation, including floor tile; acoustic ceiling; priming and painting; thermal and moisture protection; doors; fire suppression systems; ventilation and air conditioning; lighting; telecommunications cabling; and electronic safety features.

15.     In an e-mail exchange on July 18, 2012, CH2M's Program Manager confirmed that EMW's proposal should be limited to pricing the labor required for the SCIF installation, and should not include pricing for materials. Based on the material quantities listed in the CH2M BOM Spreadsheet, EMW determined the number of construction labor hours by various trades that would be required to perform the SCIF installation. It used these labor hours as the basis for its price proposal.

16.     On August 1, 2012, EMW submitted a price proposal to CH2M in the total amount of $4,132,280.65. CH2M responded that the price proposal was too high. The parties

subsequently negotiated concerning the price and agreed on a final firm fixed price of
$3,379,966.84, a reduction of over $750,000.

17.    As part of the negotiation to reduce the proposed price, EMW eliminated from its
proposal, with the knowledge and consent of CH2M, approximately $389,000 from its proposed
cost of providing on-site tradesman leads and project management, in favor of providing limited
back-office management support from Virginia on the basis of two days per week for seven (7)
months. CH2M agreed that it would provide all necessary on-site project management
personnel. In addition, EMW eliminated, with the knowledge and consent of CH2M, the
proposed $193,861.71 cost of providing personnel for inventory, material control and material
movement, because such services were to be provided by CH2M or other subcontractors.

18.    CH2M and EMW thereafter proceeded to negotiate the terms of a subcontract for
the SCIF installation. On August 30, 2012, EMW advised CH2M that the subcontract had to
include an "in scope" bill of materials list identifying the tasks and materials, by quantity and
unit of measurement, that EMW was responsible to install. EMW also requested confirmation
that it would not be responsible to supply any installable or consumable materials. CH2M
agreed to these points on September 14, 2012.

19.    On October 2, 2012, CH2M forwarded to EMW a revised draft of the proposed
subcontract document. Attachment A to the subcontract, titled "Statement of Work," stated in
Paragraph 5 that EMW would provide the "installation of all items marked as 'In Scope' in the
attached Scope Checklist." The Scope Checklist itself was included as part of Attachment A,
and set out the construction elements, material quantities and units of measurement that had
originally been communicated to EMW in the BOM Spreadsheet sent by CH2M on July 11,
2012.

20.    EMW executed Subcontract No. 816407 for Technical Services, including Attachment A and the Scope Checklist ("the Subcontract"), at its Herndon, Virginia headquarters on October 12, 2012, and delivered the Subcontract to CH2M. CH2M executed the Subcontract, including Attachment A and the Scope Checklist, at its Chantilly, Virginia, office on October 16, 2012.

21.    Under the terms of the Subcontract EMW's expected period of performance was scheduled to commence in October 2012, with work to be concluded by May 22, 2013. However, the Subcontract start date was delayed by CH2M to December 4, 2012, and on October 22, 2012, the initial completion date was extended to July 8, 2013 pursuant to change order amendment 1 to the Subcontract.

22.    During the course of EMW's work to install the SCIF the parties executed a total of 14 change order amendments to the Subcontract. Collectively these amendments increased the subcontract price by $657,775.60, making the total Subcontract price $4,037,742.44. The change order amendments also extended EMW's period of performance to February 15, 2014.

23.    However, with the knowledge and consent and at the direction of CH2M, EMW maintained personnel at the Bagram COC until May 11, 2014, for the purpose of completing additional work on the SCIF that was encompassed by change order amendments 13 and 14, dated April 7, 2014, and May 15, 2014, respectively. On April 28, 2014, CH2M directed EMW to perform the final change order work.

24.    CH2M has failed and refused to pay EMW the entire $4,037,742.44 due for the original Subcontract price and the agreed prices for approved change orders. Despite the fact that all work required under the Subcontract, as amended, was completed and accepted in May

7

2014, and despite repeated demand from EMW, CH2M has failed to pay five invoices submitted by EMW in the total amount of $387,238.92.

**B.      Significant Errors in Subcontract Scope Checklist and**
**New Work Directed by CH2M**

25.      EMW began performance of the Subcontract in December 2012. As the subcontract work proceeded during the late spring and summer 2013, EMW became aware that the materials it would have to install to complete the SCIF were likely to exceed the quantities specified in the subcontract Scope Checklist by a significant margin. At the same time, EMW was directed by CH2M to perform labor for the SCIF that was outside the scope of work described in the Subcontract Statement of Work and Scope Checklist.

26.      During July 2013 EMW conducted a detailed site review to determine exact SCIF dimensions, the quantities of materials that would be required to install the SCIF based on those dimensions, and the amount of labor necessary to install the materials. EMW also verified the nature of the work and the quantities of additional materials CH2M had directed EMW to install that were not in the original Subcontract scope of work.

27.      On September 5, 2013, EMW advised CH2M's project manager, in writing, of its findings. EMW forwarded CH2M a detailed list of construction elements, based on the Scope Checklist, showing that in 69 construction elements the actual quantity of materials required significantly exceeded the quantities set forth in the Subcontract. In many cases the actual quantities of materials required (the "Actual Quantities") were two to five times greater than the quantities stated in the Subcontract. For example, the actual quantity of perimeter gypsum wall was over 139% more that the Subcontract amount; the actual quantity of DN50 steel pipe fittings exceeded the Subcontract quantity by 320%; and the actual number of square meters of duct insulation exceeded to Subcontract amount by 400%.

8

28.    In addition, EMW's September 5, 2013, communication to CH2M identified 45 construction elements that CH2M had directed EMW to perform, but that were not included in the Subcontract Scope Checklist and that had not been incorporated into change order amendments to the Subcontract (the "Additional Scope"). These included additional electrical, communications, plumbing, HVAC, fire suppression and finish work, such as the installation of seismic control lines for the ceiling grid, seismic control lines for pipe; sprinklers, seismic controls for electrical installations such as lights, and additional communications equipment and related installation.

29.    By e-mail dated September 10, 2013, CH2M denied that there had been any change to the scope of EMW's work under the subcontract, except as a result of modifications made or to be made to the prime contract by the Corps of Engineers. CH2M rejected EMW's request for a price adjustment for the Actual Quantities and Additional Scope, and claimed that EMW was behind schedule in performing the work.

30.    On October 4, 2013, EMW submitted a formal claim for an upward adjustment of the contract price to address the cost of providing labor to install the Actual Quantities of material to be installed in the SCIF. EMW's claim also credited CH2M with the labor costs for a number of items that had been eliminated from the Subcontract Scope Checklist.

31.    The amount of EMW's October 4, 2013, claim was $1,695,313.65. EMW also advised that it would develop an updated estimate of the project schedule based on the additional work required.

32.    On October 11, 2013, EMW submitted six (6) proposed change orders to address the cost of the additional labor required to perform the 45 items of Additional Scope that CH2M

had directed. The change order proposals increased the cost of the subcontract by approximately $1,260,000.

33.     CH2M did not respond to EMW's October 4, 2013, claim, or its October 11, 2013, change order proposals. Instead, on October 17, 2013, CH2M issued a cure notice directing EMW to accelerate its performance of the work.

34.     To complete the installation of the 69 categories of Actual Quantities necessary for the SCIF, EMW was required to supply approximately 24,066 man-hours of labor above and beyond the labor required to perform the work set forth in the Subcontract Scope Checklist. Its cost of supplying this labor was $55.02 per hour, a total of approximately $1,324,136 prior to any allowance for profit.

35.     To complete the installation of the 45 Additional Scope construction elements that CH2M directed EMW to install in the SCIF, EMW was required to supply approximately 27,654 additional man-hours of labor above and beyond the labor required to perform the work set forth in the Subcontract Scope Checklist and BOM Spreadsheet. Its cost of supplying this labor was $55.02 per hour, a total of approximately $1,521,529 prior to any allowance for profit.

36.     EMW's profit is calculated at the rate of 20% of direct labor costs plus general and administrative expense, as accepted by CH2M, on all Subcontract change order amendments.

C.      **Additional EMW Labor Required by CH2M**
        **Outside the Scope of the Subcontract**

37.     Under the terms of EMW's August 2012 Subcontract price proposal, as negotiated and accepted by CH2M in the amount of $3,379,966.84, EMW was not required to provide an on-site project manager to supervise its workforce at the SCIF. Nevertheless, after the start of on-site construction, EMW had to provide a full-time on-site project manager due to

10

due to CH2M's failure to provide adequate project coordination and management. These additional project management services were outside the Subcontract Statement of Work as agreed to by the parties, and the costs claimed here do not include those in any change order amendments to the Subcontract.

38.     EMW's on-site project manager began work in Bagram in December 2012 and continued through April 2014. EMW's unreimbursed cost of supplying this labor was $79.49 per hour, a total of approximately $323,365.32, prior to any allowance for profit.

39.     Under the terms of EMW's August 2012 Subcontract price proposal, as negotiated and accepted by CH2M in the amount of $3,379,966.84, EMW was not required to supply labor for material management, inventory, material control and material movement relating to the installation of the SCIF. Instead, the parties agreed that CH2M, its joint venture partner Yuksel, or others involved in the COC project would perform material management and deliver materials required to install the SCIF to a secured storage area adjacent to the SCIF, and that these non-EMW personnel would thereafter carry the materials to the entrance of the SCIF as needed.

40.     Despite the parties' agreement, neither CH2M, Yuksel nor their other subcontractors performed required material management or regularly, consistently and timely delivered materials to the secured storage area adjacent to the SCIF, nor did they carry the materials to the entrance of the SCIF when needed by EMW to perform installation work. As implicitly directed by CH2M and as a result of these failures and in order to get the project started and to keep it moving, EMW hired a full-time Material Control Supply Manager to perform material management, obtain necessary materials and handle inventory in the secure storage area. The Material Control Supply Manager cost and services had been eliminated from

EMW's proposal during price negotiations and were outside the Subcontract Statement of Work as agreed to by the parties, and were not included in any change order amendments to the Subcontract.

41.     EMW supplied the Material Control Supply Manager from December 2012 until April 2014. Its cost of supplying this labor was approximately $173,702.50, prior to any allowance for profit.

42.     In addition, EMW personnel were routinely required to suspend the Subcontract installation work and divert their efforts to move SCIF materials into secured storage, and thereafter to move materials from storage into the SCIF for installation as needed.

43.     During the period of Subcontract performance, from December 4, 2012 to May 11, 2014, EMW re-directed approximately 4,033 man-hours of labor from performing Subcontract installation work to perform material handling and movement functions that were clearly outside the scope of work specified in its Subcontract. This redirection diverted EMW personnel from productive work installing the SCIF, reduced the efficiency of the EMW workforce, and directly increased EMW's cost of performing the Subcontract. EMW's cost of supplying this labor was $55.02 per hour, for a total of approximately $221,907, prior to any allowance for profit.

44.     Finally, during the period December 2012, to October 2013, EMW experienced the following problems at the SCIF workspace, all of which were under the control of CH2M:

    a.     Regular power outages and power surges that caused a lack of illumination in the SCIF workspace, the frequency and length of which were significantly greater that the allowance for unscheduled work stoppages in the Technical Specifications of the Subcontract.

     b.     sporadic lack of heat in the SCIF workspace;

     c.     a failure by CH2M, Yuksel and other subcontractors to timely deliver to the SCIF materials necessary to perform the installation work;

     d.     the delivery of defective or otherwise unusable materials; and

     e.     missing or erroneous construction drawings.

45.     The power outages and surges, lack of illumination, lack of heat, lack of materials, defective materials, and missing or erroneous construction plans all prevented EMW personnel from performing productive work installing the SCIF and also reduced the efficiency of the EMW workforce, as personnel with different skillsets were re-assigned to perform whatever work could be completed with available material. This delayed the completion of Subcontract work and directly increased EMW's cost of performing the Subcontract. EMW lost approximately 4,071 man-hours of productive labor due to power outages and surges, lack of illumination, lack of heat and lack of materials. EMW's cost of labor was $55.02 per hour, for a total of approximately $224,002, prior to any allowance for profit.

## COUNT I
## Constructive Fraud Against CH2M

46.     EMW incorporates by reference the allegations in Paragraphs 1-45, above, as if fully set forth.

47.     In July 2012 CH2M sent EMW the BOM Spreadsheet in furtherance of its request that EMW submit a proposal to perform the construction labor services required by the COC SCIF installation at Bagram Airfield.

48.     CH2M knew that EMW was relying on the accuracy of the material quantities listed in the BOM Spreadsheet to prepare its proposal. CH2M represented to EMW that the information in the BOM Spreadsheet was sufficiently accurate to provide a reasonable basis to

13

determine installation labor requirements, and it intended that EMW rely on that information in developing its proposal.

49. The information in the BOM Spreadsheet was material to EMW's development of its proposal. EMW relied on the accuracy of the information in the BOM Spreadsheet to determine the amount of labor required to install the SCIF. EMW calculated its labor requirements and costs on the basis of that information and, from that calculation, developed its price proposal. EMW's decision to agree to the final negotiated Subcontract price of $3,379,966.84 was made in reliance on the accuracy of the information in the BOM Spreadsheet.

50. As a result, and in furtherance of EMW's reliance on the materiality of the information from the BOM Spreadsheet, the information was incorporated into the Subcontract Statement of Work, Attachment A, and the Scope Checklist.

51. In fact, the information in the BOM Spreadsheet was materially inaccurate. Specifically, the materials quantities in the BOM Spreadsheet were substantially lower than the Actual Quantities required to install the SCIF. As a result, the installation of the Actual Quantities substantially increased the labor hours necessary to perform the SCIF installation work, and thereby substantially increased EMW's cost to perform the Subcontract. If EMW had known the correct material quantities, as ultimately determined by its site review in July 2013, its price proposal to CH2M would have been much higher, and EMW would never have agreed to a final negotiated Subcontract price of $3,379,966.84.

52. CH2M misrepresented, innocently or negligently, the Actual Quantities of material, and therefore the actual scope of work, required to install the SCIF by providing the materially inaccurate BOM Spreadsheet to EMW for the purpose of its proposal. CH2M

14

intended that EMW would rely on the misrepresentation in developing its proposal, and EMW actually relied to its detriment.

53.     As a direct and proximate result of CH2M's constructive fraud, to perform the original Subcontract scope of work EMW has been damaged by having incurred $1,324,136 in additional direct labor costs, plus its reasonable profit of twenty (20) percent, for a total of $1,588963.21

## COUNT II

### Breach of Contract By CH2M – Failure to Pay Subcontract Price

54.     EMW incorporates by reference the allegations in Paragraphs 1-53, above, as if fully set forth.

55.     In October 2012 EMW and CH2M entered into a valid and enforceable Subcontract, No. 816407, for labor services to install the SCIF in the COC at Bagram Airfield, Afghanistan.

56.     The Subcontract was amended by agreement of the parties through the execution of 14 written change orders. As amended, the total Subcontract price was $4,037,742.60, and EMW's actual period of performance ran from December 4, 2012, to least May 11, 2014.

57.     The initial scope of work that EMW was required to perform under the Subcontract was defined by Attachment A, titled "Statement of Work," as well as the "Scope Checklist" included in Attachment A. The scope of work was subsequently amended by additional work described in the change order amendments executed by the parties.

58.     EMW completed all work required by Attachment A, the Scope Checklist and the change orders by May 11, 2014. EMW has fully performed its obligations under the terms of the Subcontract, as amended.

59.     CH2M has breached its obligations under the Subcontract by failing and refusing to pay EMW the full Subcontract price, as amended, of $4,037,742.60. Despite repeated demand from EMW, CH2M has, in violation of its contractual obligation to pay for the work performed, failed and refused to pay EMW for five invoices in the total amount of $387,238.92.

60.     As a direct result of CH2M's breach of contract, EMW has been damaged in the amount of $387,238.92, plus accrued interest in the amount of $8,732.18 on that amount from the invoice dates through April 30, 2015.

**COUNT III**
**<u>Breach of Contract By CH2M – Failure to Pay for Extra Scope of Work</u>**

61.     EMW incorporates by reference the allegations in Paragraphs 1-60, above, as if fully set forth.

62.     CH2M has further breached its obligations under the Subcontract by:

a.      Failing and refusing to pay EMW for extra labor required to install the Actual Quantities required for the SCIF, which were above and beyond the quantifies of materials specified by the Subcontract Statement of Work and the Scope Checklist to which CH2M and EMW had agreed;

b.      Failing and refusing to pay EMW for the labor required to install the Additional Scope items, none of which were included in the Subcontract Statement of Work, the Scope Checklist, or any change order amendment;

c.      Failing and refusing to provide adequate project management which necessitated EMW to provide an on-site project manager when such services were not included in EMW's proposal as accepted by CH2M or the Subcontract Statement of Work;

16

     d.     Failing and refusing to supervise, manage and coordinate the COC project so that personnel of CH2M, Yuksel or subcontractors other than EMW (1) delivered materials to be installed in the SCIF in a regular, consistent and timely manner to the secured storage area adjacent to the SCIF; and  (2) transferred the materials to the entrance of the SCIF, making them available when needed by EMW to perform installation work; failing to provide  supply management and materials handling personnel when such services were not included in EMW's proposal as accepted by CH2M or the Subcontract Statement of Work; and failing to provide the necessary labor to move the project materials to the SCIF;

     e.     Failing and refusing to supervise, manage, coordinate and perform the COC project so that the frequency and length of power outages and power surges and related loss of illumination in the SCIF were within the allowance for unscheduled work stoppages in the Technical Specifications of the Subcontract; to provide necessary and reasonable heat to the SCIF worksite as required; to insure the timely delivery of necessary materials to the SCIF worksite for installation; to insure that delivered materials were of good quality, usable and non-defective; and to provide all necessary, current and accurate construction plans required by the SCIF installation work.  The power outages and surges, lack of illumination, lack of heat, lack of materials, defective materials, and missing or erroneous construction plans all prevented EMW personnel from performing productive work installing the SCIF and also reduced the efficiency of the EMW workforce.

63.     As a direct result of CH2M's breach of contract, EMW incurred substantial additional direct labor costs in the amount of approximately $3,600,530.34, plus reasonable

profit of twenty (20) percent of that amount, to install the Actual Quantities of SCIF materials; perform the Additional Scope of work; provide an on-site Project Manager and Material Control Supply Manager; perform material handling and movement functions; and suffer lower labor productivity as a result of unanticipated and unplanned-for power outages, lack of heat and lack of materials.

**COUNT IV**
**Claim Under the Miller Act**

64.     EMW incorporates by reference the allegations in Paragraphs 1-63, above, as if fully set forth.

65.     The Sureties have issued payment bonds on behalf of the CH2M Hill-Yuksel Joint Venture as required by 40 U.S.C. § 3131, *et seq.,* for the protection of persons supplying labor and materials to the COC project. EMW is protected by those payment bonds because EMW supplied services for the installation of the COC SCIF pursuant to its Subcontract with CH2M.

66.     More than 90 days have passed since the last day on which EMW performed labor under the Subcontract, and EMW has not been paid in full for labor provided to CH2M.

67.     Pursuant to 40 U.S.C. § 3133(b)(2), EMW has a right to sue on the payment bonds issued by the Sureties to recover the amounts due under the Subcontract.

68.     Accordingly, the Sureties, and each of them, are jointly and severally liable to EMW for the full amount EMW is due under the terms of the Subcontract, namely $3,698.000, plus reasonable profit of twenty (20) percent of that amount.

WHEREFORE, EMW prays that the Court award it judgment as follows:

A.     As to Count I, damages against CH2M in the amount of $1,324,136 of direct labor costs, plus profit in the amount of twenty (20) percent, for a total of $1,588,693, or as proven at trial;

18

B.     As to Count II, damages against CH2M in the amount of $387,238.92 plus interest from the due dates of EMW's five unpaid invoices, plus interest in the amount of $8,732.18 through April 30, 2015, for a total of $395,971, or as proven at trial;

C.     As to Count III, damages against CH2M in the amount of $3,600,530.34 of direct labor costs, plus profit in the amount of twenty (20) percent, for a total of $4,320,636.40, or as proven at trial;

D.     As to Count IV, damages against the Sureties, jointly and severally, in the amount of $4, 716,607.50, of unpaid invoices and additional direct labor costs, or as proven at trial;

E.     An award of prejudgment interest on all judgment amounts from May 11, 2014 until the date of judgment; and

F.     Such other and further relief as the Court deems just.

EMW Inc.
By Counsel


*Russell J. Gaspar /vk*
Russell J. Gaspar, Va. Bar No. 15020
rgaspar@cohenmohr.com

Victor Klingelhofer, Va. Bar No. 22609
vklingelhofer@cohenmohr.com

Andrew K. Wible, Va. Bar No. 78168
awible@cohenmohr.com

COHEN MOHR LLP
1055 Thomas Jefferson Street, N.W.
Suite 504
Washington, D.C. 20007
(202) 342-2550
(202) 342-6147 (facsimile)

Attorneys for Plaintiff